# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
July 16, 2013 Session

## JULIE SPECK AND KEVIN SPECK
### v.
## WOMAN'S CLINIC, P.A. AND DR. RYAN ROY

**An Appeal from the Circuit Court for Madison County**
**No. C1187     Roy B. Morgan, Jr., Judge**

---

**No. W2012-02111-COA-R3-CV - Filed September 18, 2013**

---

This appeal involves inquiry notice of the claimed injury for purposes of triggering the medical malpractice one-year statute of limitations. The plaintiffs, a married couple with four children, wanted to prevent the conception of another child. To that end, the plaintiff wife underwent a procedure to prevent pregnancy at the defendant medical clinic. About a year later, she became pregnant. The wife later gave birth to a healthy baby boy. The plaintiffs filed this medical malpractice lawsuit against the clinic and the treating physician, claiming the wife's pregnancy as the injury. The defendants filed a motion for summary judgment, arguing that the plaintiffs' claim was barred under the applicable one-year statute of limitations. The trial court held that the wife was put on notice of her pregnancy by, at the very latest, the day that she obtained a positive result on a home pregnancy test; it held that the claim was time-barred on that basis and granted the defendants' motion for summary judgment. The plaintiffs' subsequent motion to alter or amend was denied. The plaintiffs now appeal. Discerning no error, we affirm.

#### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Richard Glassman and Jonathan Stokes, Memphis, Tennessee, for the Plaintiff/Appellants, Julie and Kevin Speck

Marty R. Phillips and Michelle Greenway, Jackson, Tennessee, for the Defendant/Appellees, Woman's Clinic, P.A., and Ryan Roy, M.D.

# OPINION

Plaintiff/Appellant Julie Speck and her husband, Plaintiff/Appellant Kevin Speck (collectively, "the Specks"), were married in 2005. Prior to the events that led to this lawsuit, Mr. and Mrs. Speck had full custody of four children — two children born during their marriage as well as two children from Mrs. Speck's previous marriage. At the time of the events outlined below, the Specks' children were all under 14 years old.

The responsibilities for their four young children left the Specks in financial straits, and Mrs. Speck also faced challenges regarding her mental and physical health. Consequently, in 2008, Mr. and Mrs. Speck decided to take steps to ensure that they would not conceive any more children. To this end, the Specks consulted with physicians at the Defendant/Appellee Woman's Clinic, P.A. They discussed having Mrs. Speck undergo an Essure sterilization procedure ("Essure Procedure") to prevent future pregnancy.[1] In the course of the Specks' discussions at the Woman's Clinic, Mr. Speck told a consulting physician that he was planning to undergo a vasectomy so that he and Mrs. Speck would have "double insurance" that they would not conceive another child. The physician assured the Specks that the Essure Procedure was so efficacious that a vasectomy for Mr. Speck would be a waste of money. Convinced, the Specks scheduled Mrs. Speck for the Essure Procedure. Mr. Speck did not undergo the vasectomy at that time.

On August 25, 2008, Defendant/Appellant Ryan Roy, M.D. ("Dr. Roy"), a physician at the Woman's Clinic, performed the Essure Procedure on Mrs. Speck. After the procedure, the Speck's were advised to use another form of birth control for three months until they could confirm that the procedure had accomplished its purpose. Three months later, Mrs. Speck underwent a test at the Woman's Clinic, which confirmed that the procedure was a success. The Specks were told at that time that they could begin relying solely on the Essure Procedure to prevent pregnancy. According to Mrs. Speck, Dr. Roy commented to her in that visit that if she later became pregnant, it would be a "miracle."

About a year later, on November 27, 2009, the day after Thanksgiving, Mrs. Speck realized uneasily that her menstrual cycle was very late. This was unusual for her, and it caused Mrs. Speck to suspect that she was pregnant, so she purchased two home pregnancy tests at a local drugstore. Mrs. Speck took the first test that day, November 27, 2009. The result of the test showed that she was pregnant. On that same day or the next, Mrs. Speck took the second home pregnancy test; it likewise was positive for pregnancy. The box containing the home pregnancy tests Mrs. Speck used claimed that the tests are 99% accurate.

---

[1]The Essure Procedure involves the placement of coils inside the opening of the woman's fallopian tubes, which eventually creates a barrier to prevent conception.

Soon thereafter, Mrs. Speck called the Woman's Clinic to tell them about the results of the home pregnancy tests. Mrs. Speck went to the Clinic on Monday, November 30, 2009, and was given a urine pregnancy test, similar to the two home pregnancy tests she had taken. The result of this test was also positive.

On December 1, 2009, Woman's Clinic personnel performed an ultrasound test on Mrs. Speck. The ultrasound showed that Mrs. Speck was pregnant and that the embryo was normally implanted in her uterus.[2] Several months later, on July 21, 2010, Mrs. Speck gave birth to her fifth child, a healthy baby boy.

By letter dated November 29, 2010, the Specks served the Woman's Clinic and Dr. Roy (collectively, "Defendants") with written notice of a potential claim for medical negligence pursuant to Tennessee Code Annotated § 29-26-121.[3] On March 30, 2011, the Specks filed the instant lawsuit against the Defendants for medical malpractice, asserting wrongful pregnancy. Discovery ensued.

On September 21, 2011, the Defendants took the depositions of Mr. and Mrs. Speck.[4] In Mrs. Speck's deposition, she testified that she first suspected that she was pregnant on November 27, 2009, the day after Thanksgiving. Her suspicion was triggered by the fact that her monthly menstrual cycle was "several days late," which she thought was unusual.[5] Mrs. Speck testified:

> [Question:] When did you suspect that you were pregnant? . . .
> [Mrs. Speck:] . . . It was the day after Thanksgiving in 2009.

---

[2] The ultrasound also showed that one of the coils inserted in the course of the Essure Procedure to block Mrs. Speck's fallopian tubes had become dislodged.

[3] That statute provides in part:

> (a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

Tenn. Code Ann. § 29-26-121(a)(1) (2012).

[4] The Plaintiffs took the deposition of Dr. Roy on the same day.

[5] A Woman's Clinic medical record dated November 30, 2009 indicates that Mrs. Speck's last menstrual cycle had occurred 5.5 weeks prior to that visit.

. . .

[Question:] Why were you suspicious? Or why did you think you were pregnant?

[Mrs. Speck:] My period was several days late.

[Question:] And that was unusual —

[Mrs. Speck:] Yes, sir.

[Question:] — because you'd always had regular periods.

[Mrs. Speck:] They were always a couple days late, but not that many.

[Question:] And having been pregnant before, you knew what that likely —

[Mrs. Speck:] Yes, sir.

[Question:] — signified, didn't you.

[Mrs. Speck:] (The witness nodded.)

[Question:] And what did you do to confirm your suspicion that you were pregnant?

[Mrs. Speck:] I went and bought a home pregnancy test, two pregnancy tests.

. . .

[Question:] . . . Why did you get two?

[Mrs. Speck:] To make double sure.

. . .

[Question:] And the only thing you had in mind was you were pregnant?

[Mrs. Speck:] It's the only thing I could think of.

Mrs. Speck also testified that the results of the two home pregnancy tests she took were "clearly" positive. Mrs. Speck said that she called Mr. Speck to tell him about the test results after the first test was positive.

Mrs. Speck testified about going to the Woman's Clinic a few days after she took the home pregnancy tests, and about taking another urine pregnancy test there. She said that the ultrasound performed at the Clinic showed that "[t]he baby was where it was supposed to be in the uterus." When the Specks met with Dr. Roy a few days later, Mrs. Speck said, he was as "surprised and blown away as we were" that she was pregnant.

In Mr. Speck's deposition, he testified that he knew his wife was pregnant even before she took the pregnancy tests. He said, "I know my wife, and I know — I know how easily we got pregnant with the first two children. And . . . my gut told me she was pregnant." Like Mrs. Speck, Mr. Speck noted that the Woman's Clinic gave Mrs. Speck another pregnancy test that confirmed her pregnancy. He commented, however, that there"was never really any question" in his mind about Mrs. Speck being pregnant when they went to the Clinic that first time. After that visit, Mr. Speck testified, the Woman's Clinic called them and asked Mrs. Speck to undergo another round of tests to determine whether she had a tubal pregnancy. In

that next visit, Clinic personnel performed an ultrasound on Mrs. Speck, which showed a normal pregnancy.

Based on the Specks' deposition testimony, the Defendants filed a motion for summary judgment on February 1, 2012. The Defendants asserted in their motion that the Specks' complaint was time-barred under the one-year statute of limitations set out in Tennessee Code Annotated § 29-26-116.[6] That same day, the Defendants also filed a motion for partial summary judgment in which they argued that the Specks' claimed damages for "the costs of raising, educating, nurturing, etc. of the child born subsequent to the procedure" are not recoverable in Tennessee as a matter of law pursuant to **Smith v. Gore**, 728 S.W.2d 738 (Tenn. 1987).

On April 5, 2011, the Specks filed the affidavit of Mrs. Speck in which she attempted to put her deposition testimony into context. In the affidavit, Mrs. Speck stated that she was not satisfied that the home pregnancy tests were accurate, so she "went to see [her] physician to find out if in fact [she] was pregnant via medical testing or ultrasound." Her affidavit states: "I was very suspicious that I would have had a false positive to the [home] pregnancy test . . . because I had been assured by Dr. Roy that I could not get pregnant and therefore it came as a total shock to me when I was told by the doctor that in fact I was pregnant." Mrs. Speck explained her deposition testimony as follows: "[W]hen I said that I felt I was pregnant or thought that I was pregnant, or whatever word I used, that is with hindsight." Further clarifying her deposition testimony, the affidavit explains, "At the time I did the home pregnancy test, I did feel like I was pregnant but I know that home pregnancy tests have a certain percentage of false positives and I knew that until it had been confirmed by the doctor via appropriate medical testing and/or sonogram, that I would not know for sure." The affidavit states that Mrs. Speck went to the Woman's Clinic "to ascertain if in fact I was or was not pregnant regardless of my suspicions, feelings, thought processes, or home pregnancy test, I knew I would not be confirmed as pregnant until the doctor ran the appropriate medical test." Thus, she averred that the first time she "knew" that she was pregnant was on December 1, 2009, the date of the ultrasound test at the Clinic.

---

[6]That statute provides:

> (a)(1) The statute of limitations in health care liability actions shall be one (1) year as set forth in § 28-3-104.
>
> (2) In the event the alleged injury is not discovered within such one-year period, the period of limitation shall be one (1) year from the date of such discovery.

Tenn. Code Ann. § 29-26-116(a)(1) and (a)(2) (2012).

On April 11, 2011, the Defendants filed the affidavit of Dr. Roy in support of their motions for summary judgment. Dr. Roy's affidavit states, *inter alia*, that the Woman's Clinic uses "the same type of pregnancy test that is purchased over the counter," and that the over-the-counter tests and the tests used at the Clinic have "the same accuracy," which is 99%. He averred in his affidavit that an ultrasound is not used to confirm whether a patient is pregnant, but rather is used "to confirm whether or not a patient has an ectopic or intrauterine pregnancy."

On April 12, 2011, the trial court conducted a hearing on the Defendants' motions for summary judgment. At the hearing, the Defendants argued that the Specks discovered the injury — in this case, pregnancy — on or before November 27, 2009, when the home pregnancy test indicated that Mrs. Speck was pregnant. Based on this, the Defendants asserted that the Specks should have given the Defendants notice of their medical malpractice claim by November 27, 2010. Since the Specks gave their notice to the Defendants on November 29, 2010, the Defendants contended, the notice was too late. The Defendants also argued that, even if the cause of action began to accrue on November 29, 2009, and the initial notice was deemed timely, the Specks' lawsuit was nevertheless untimely filed. They noted that, to file suit within the grace period of 120 days after the expiration of the applicable statute of limitations, the Specks would have had to file their lawsuit no later than March 29, 2010, but the Specks filed their lawsuit on March 30, 2010.[7] Therefore, the Defendants argued, the Specks' lawsuit was untimely as a matter of law.

In response, the Specks asserted that the limitations period for their claim began to accrue on December 1, 2009, when Mrs. Speck underwent the ultrasound at the Woman's Clinic. The Specks reasoned that this was the date on which Mrs. Speck knew for certain that she was pregnant. The Specks claimed that their argument is bolstered by the fact that the Woman's Clinic did not instruct Mrs. Speck to stop taking her prescription medication until December 1, 2009, when the ultrasound *confirmed* that she was pregnant. The Specks characterized any knowledge Mrs. Speck had about her pregnancy before December 1, 2009 as based on hindsight. The Specks contended there is, at the very least, a fact question on

---

[7]The statute providing for the 120-day grace period provides:

> (c) When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider. Personal service is effective on the date of that service. Service by mail is effective on the first day that service by mail is made in compliance with subdivision (a)(2)(B). . . .

Tenn. Code Ann. § 29-26-121(c).

the issue of when Mrs. Speck knew or should have known that she was pregnant, so summary judgment was inappropriate.

At the conclusion of the hearing, the trial court issued an oral ruling granting the Defendants' motion for summary judgment. The trial court held that the Specks were "on notice of the pregnancy by November 27th, 2009" as a matter of law. It agreed with the Specks that the November 29, 2010 notice was timely because the one-year deadline, November 27, 2010, fell on a Saturday, so giving notice on the following Monday was timely. It held however that the Specks' March 30, 2011 complaint was untimely because it was not filed within the 120-day grace period provided by statute. In the same oral ruling, the trial court granted the Defendants' motion for partial summary judgment on damages based on *Smith v. Gore*, thus resolving all issues before the court.[8]

On April 27, 2012, the trial court entered a written order consistent with its oral ruling, granting summary judgment in favor of the Defendants based on the applicable statute of limitations and dismissing the Specks' action. The trial court recited the following undisputed facts:

> 1. On August 25, 2008, Dr. Ryan Roy performed an Essure sterilization procedure on Mrs. Julie Speck. The purpose of the procedure was to prevent Mrs. Speck from becoming pregnant.
>
> 2. Mrs. Speck had been pregnant four (4) times before the pregnancy at issue in this case.
>
> 3. Mrs. Speck had a history of regular and timely menstrual periods.
>
> 4. In her deposition, Mrs. Speck testified that she suspected she was pregnant on the day after Thanksgiving in 2009. The day after Thanksgiving in 2009 was November 27, 2009.
>
> 5. Mrs. Speck testified that she believed she was pregnant, because her menstrual period was several days late and that was unusual for her. Having been pregnant before and having had regular and timely menstrual periods previously, she knew that her menstrual period being late likely meant that she was pregnant.

___

[8]The Specks acknowledged at the hearing that child-rearing expenses are not recoverable in Tennessee under the holding in *Smith v. Gore*, but they sought to preserve the claim in order to advocate a change in the law at the appellate level.

6. To confirm her belief that she was pregnant, Mrs. Speck bought two (2) home pregnancy tests on November 27, 2009. By her own testimony, Mrs. Speck bought two home pregnancy tests, because she wanted to be "double sure" of the results.

7. By November 27, 2009, she had informed her husband, Plaintiff Kevin Speck, that her menstrual period was late and the only thing she could think was that she was pregnant. Mr. Speck believed Mrs. Speck was pregnant at that time.

8. The pregnancy tests that Mrs. Speck purchased indicated that they were 99% accurate.

9. Mrs. Speck took the first pregnancy test on November 27, 2009, and it was positive. The positive result was clear, obvious, and immediate. Mrs. Speck told Mr. Speck about the results of the pregnancy test. The pregnancy test had confirmed that Mrs. Speck was pregnant, and that's what she had believed to be true even before she confirmed it with the pregnancy test. Mrs. Speck was upset that she was pregnant.

10. Mrs. Speck took a second pregnancy test on November 27 or 28, 2009, and it was also positive.

Based on these undisputed facts, the trial court concluded that Mrs. Speck "knew or should have known that she was pregnant no later than November 27, 2009," because "[b]y that date, she was aware of facts sufficient to put a reasonable person on notice that she was pregnant . . . ." The trial court also noted that Mrs. Speck was actually aware of the relevant facts, because she "undertook steps to investigate or inquire her belief that she was pregnant by taking a home pregnancy test, which confirmed her pregnancy within 99% accuracy."

Therefore, consistent with its oral ruling, the trial court used November 27, 2009, as the accrual date for the Specks' cause of action. It also held, consistent with its oral ruling, that Section 29-26-121 notice was timely given, because November 27, 2010, fell on a Saturday, and "the statute of limitations did not run until November 29, 2010, the following Monday."[9] The trial court held, however, that the Specks' complaint was not filed within 120 days of

_____

[9]The Defendants do not challenge on appeal the trial court's conclusion that the Specks' pre-suit notice was timely filed on November 29, 2009, based on the fact that November 27, 2009 fell on a Saturday, and we therefore do not address the issue in this opinion.

the pre-suit notice, because Section 29-26-121(c) "only extends the applicable statute of limitations for one hundred twenty (120) days from the date of the expiration of the statute of limitations . . . ." Because the 120-day period expired on March 29, 2011, the trial court held that the filing of the Specks' complaint on March 30, 2011, was untimely. Accordingly, the trial court granted the Defendants' motion for summary judgment on that basis.

Also on April 27, 2012, the trial court entered a separate written order granting the Defendants' motion for partial summary judgment. It held that the Specks are precluded from recovering any damages other than those permitted in *Smith v. Gore*.

Meanwhile, on April 16, 2011, after the trial court's oral ruling but before the trial court entered its written orders, the Specks filed a motion to alter or amend or to reconsider the trial court's oral ruling on summary judgment. The Specks asserted in the motion to alter or amend that they "have filed or will file the Supplemental Affidavit of Julie Speck," which would supply further information that would necessitate a reversal of the trial court's oral ruling. In the motion to alter or amend, the Specks did not challenge the trial court's grant of partial summary judgment based on *Smith v. Gore*.

On April 24, 2011, as indicated in the motion to alter or amend, the Specks filed the Supplemental Affidavit of Plaintiff Julie Speck ("Supplemental Affidavit"). In the Supplemental Affidavit, Mrs. Speck stated that she called the Woman's Clinic "on November 27, 28, or 29," 2009, and told the person who answered that she had undergone an Essure Procedure and "could not be pregnant but was suspicious and needed to talk to a doctor." When Dr. Roy returned her call, Mrs. Speck averred, he told her that "there was no way that I could be pregnant, it was not possible, you cannot be pregnant were his words." When Mrs. Speck told Dr. Roy about the positive results from her two home pregnancy tests, Mrs. Speck stated, Dr. Roy responded "that something was wrong, that you cannot be pregnant, that there have been some false positives on pregnancy test[s] and that apparently there was a batch of faulty or defective pregnancy tests in the Jackson area." Dr. Roy told Mrs. Speck to call the Clinic the next Monday to make an appointment to "be tested to see what was wrong, but that I could not be pregnant and that it would have to be something other than pregnancy that was going on physically." Based on Dr. Roy's assurances, the Specks argued, Mrs. Speck could not be certain that she was pregnant until the ultrasound performed at the Clinic confirmed it. At the very least, the Specks contended, Mrs. Speck's Supplemental Affidavit created a fact question on the issue of notice. After the trial court filed its April 27, 2012 written orders granting summary judgment in favor of the Defendants, the Specks refiled the same motion to alter or amend.

On July 13, 2012, the trial court conducted a hearing on the motion to alter or amend. At the conclusion of the hearing, the trial court denied the motion and reaffirmed its earlier ruling.

The trial court first held that it would be inappropriate to consider the Supplemental Affidavit of Mrs. Speck, because that affidavit could have been submitted before the trial court issued its ruling on the summary judgment motions. Nevertheless, the trial court held, even if it considered the Supplemental Affidavit, it would nevertheless deny the motion to alter or amend, because the undisputed facts still showed that by November 27, 2009, Mrs. Speck was aware of sufficient facts to put her on notice of her pregnancy. The trial court reasoned that, "it's not a question of knowing absolutely that she was pregnant. It's a matter of putting — being put on notice of the possibility."

On August 9, 2012, the trial court entered an order on the motion to alter or amend consistent with its oral ruling, stating that the motion failed "to meet any of the Rule 59 grounds for overturning the Order Granting the Defendants' Motion for Summary Judgment." The Specks now appeal.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Specks raise the following issues:

> 1. Whether the trial court erred in granting the Defendants' motion for summary judgment?
>
> 2. Whether the trial court erred in denying the Specks' motion to alter or amend?
>
> 3. Whether the trial court erred in granting the Defendants' motion for partial summary judgment?

"The granting or denying of a motion for summary judgment is a matter of law, and our standard of review is *de novo* with no presumption of correctness." *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010). In conducting our review, we are guided by the following well-established standards:

> A summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008). When ruling on a summary judgment motion, the trial court must accept the nonmoving party's evidence as true and resolve any doubts concerning the existence of a genuine issue of material fact in favor of the nonmoving party. *Shipley v. Williams*, 350 S.W.3d 527, 536 (Tenn. 2011) (quoting *Martin v. Norfolk S. Ry.*, 271 S.W.3d

76, 84 (Tenn. 2008)). "A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).

*Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013).

We review a trial court's decision to grant or deny a motion to alter or amend pursuant to Rule 59.04 of the Tennessee Rules of Civil Procedure under the more deferential abuse-of-discretion standard.[10]  *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003).  Under this standard, "[a] trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.' " *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).  If the trial court's discretionary decision is within the range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative.  *See White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

## ANALYSIS

### Summary Judgment

Tennessee Code Annotated § 29-26-116 states: "The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28-3-104." Tenn. Code Ann. § 29-26-116(a)(1). The statute refers to the so-called "discovery rule" by providing that, if "the alleged injury is not discovered within such one (1) year period, the period of limitation shall be one (1) year from the date of such discovery." Tenn. Code Ann. 29-26-116(a)(2).  Thus, under the discovery rule, the statute of limitations in medical malpractice actions "is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and as a reasonable person is not put on inquiry." *Roe v. Jefferson*, 875 S.W.2d 653, 656-57 (Tenn. 1994); *see Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 458 (Tenn. 2012) (discussing historical background of discovery rule).  The discovery rule applies in cases in which the plaintiff does not discover and could not reasonably be expected to discover that he has a right of action; it does not permit the plaintiff to wait until he knows all of the injurious effects and consequences of a tortious act.  *Potts v. Celotex Corp.*, 796

---

[10]The Specks did not cite Rule 59.04 of the Tennessee Rules of Civil Procedure in their motion to alter or amend, but the trial court properly treated the motion as such.

S.W.2d 678, 680-81 (Tenn. 1990). The Tennessee Supreme Court recently summarized the discovery rule as applied in medical malpractice cases:

> In summary, a medical malpractice cause of action accrues when one discovers, or in the exercise of reasonable diligence should have discovered, both (1) that he or she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury. A claimant need not actually know of the commission of a wrongful action in order for the limitations period to begin, but *need only be aware of facts sufficient to place a reasonable person on notice that the injury was the result of the wrongful conduct of another.* If enough information exists for discovery of the wrongful act through reasonable care and diligence, then the cause of action accrues and the tolling of the limitations period ceases. Neither actual knowledge of a breach of the relevant legal standard nor diagnosis of the injury by another medical professional is a prerequisite to the accrual of a medical malpractice cause of action.

*Sherrill v. Souder*, 325 S.W.3d 584, 595 (Tenn. 2013) (emphasis added). Knowledge of facts sufficient to give notice of the injury and the fact that the injury was the result of the wrongful or tortious conduct of another is "variously referred to as 'constructive notice' or 'inquiry notice.'" *Redwing*, 363 S.W.3d at 459. The plaintiff is deemed to have constructive notice or inquiry notice when the plaintiff "in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998).

On appeal, the Specks argue that the trial court erred in holding as a matter of law that they "discovered the alleged injury no later than November 27, 2009." They claim that the trial court must presume that "whether a plaintiff exercised reasonable care and diligence in discovering the injury or wrong is a question of fact for the jury to determine." This presumption is overcome, the Specks assert, only if the facts viewed in a light most favorable to the moving party permit the trier of fact to reasonably reach only one conclusion. They claim that, in this case, the date on which the Specks had inquiry notice of their claim against the Defendants remains a question of fact for the jury, because some of the evidence in the record indicates that Mrs. Speck did not know for certain that she was pregnant until she was tested at the Woman's Clinic on November 30 and/or December 1, 2009. For that reason, the Specks maintain, the trial court erred in granting summary judgment in favor of the Defendants.

In this case, the claimed injury is a healthy pregnancy that occurred after the Defendants performed a pregnancy-avoidance medical procedure in an allegedly negligent manner. In

this circumstance, the limitations period began to run when the Specks had knowledge of facts sufficient to put a reasonable person on notice that Mrs. Speck was "injured," *i.e.*, pregnant. *See Redwing*, 363 S.W.3d at 459 (quoting *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995) (quoting *Roe*, 875 S.W.2d at 657)). The Supreme Court has explained that, "once a plaintiff gains information sufficient to alert a reasonable person of the need to investigate 'the injury,' the limitation period begins to run." *Sherrill*, 325 S.W.3d at 593 n.7 (quoting *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 461 (Iowa 2008)). "The discovery rule is not intended to permit a plaintiff to delay filing suit until the discovery of all the facts that affect the merits of his or her claim." *Redwing*, 363 S.W.3d at 459. "Neither actual knowledge of a breach of the relevant legal standard nor diagnosis of the injury by another medical professional is a prerequisite to the accrual of a medical malpractice cause of action." *Sherrill*, 325 S.W.3d at 595.

Applying these principles to the undisputed facts in this case, we must agree with the trial court that the Specks were at least on inquiry notice of Mrs. Speck's pregnancy no later than November 27, 2009. All of the evidence submitted — the Specks' depositions and Mrs. Speck's affidavits — indicate that Mrs. Speck suspected she was pregnant on that date and received at least some confirmation of her suspicion in the form of a positive result on one of the home pregnancy tests she purchased. Under these circumstances, the Specks were on inquiry notice on November 27, 2009, regardless of the accuracy of the home pregnancy test,[11] regardless of whether the Specks subjectively believed that the test results were inaccurate, and regardless of whether the purpose of an ultrasound test is to confirm the results of other types of pregnancy tests. As we have indicated, one need not know "of all the facts that affect the merits of . . . her claim," *Redwing*, 363 S.W.3d at 459, and "diagnosis of the injury by another medical professional" is not a prerequisite for inquiry notice, *see Sherrill*, 325 S.W.3d at 595. Accordingly, we must conclude that the trial court did not err in granting summary judgment in favor of the Defendants based on the applicable statute of limitations.[12]

---

[11]The boxes containing the home pregnancy tests indicate that the results are 99% accurate, and Dr. Roy's affidavit establishes that the urine tests performed in the Clinic have the same level of accuracy.

[12]The Specks do not dispute that, if November 27, 2009 is determined to be the accrual date for the statute of limitations, even if extended to the following Monday (November 29, 2009), then the lawsuit is untimely because it was not filed within 120 days of the applicable statute of limitations pursuant to Section 29-26-121(c).

## Motion to Alter or Amend

The Specks argue further that the trial court abused its discretion in denying the motion to alter or amend the grant of summary judgment, and in refusing to consider Mrs. Speck's Supplemental Affidavit that was filed to support the motion to alter or amend.

In denying the Specks' motion to alter or amend, the trial court reasoned:

> The Court finds that a Rule 59.04 motion serves a limited purpose and should be granted for one of three reasons: "(1) controlling law changed before the judgment becomes final; (2) when previously unavailable evidence becomes available; or (3) to correct a clear error of law or to prevent injustice." ***Chambliss v. Stohler***, 124 S.W.3d 116 (Tenn. Ct. App. 2003). The Court finds that Plaintiffs' Motion to Alter and/or Amend Judgment/Reconsider Granting Defendants' Motion for Summary Judgment fails to meet any of the Rule 59 grounds for overturning the Order Granting Defendants' Motion for Summary Judgment.

The trial court then held that it would be inappropriate to consider the Supplemental Affidavit of Mrs. Speck in ruling on the motion to alter or amend because the affidavit "attempts to create an issue of material fact after an adverse ruling of this Court" and was inconsistent with Mrs. Speck's prior testimony. Furthermore, the trial court reasoned, the Specks offered "no plausible reason for failing to present the evidence contained in the Supplemental Affidavit of Julie Speck prior to the hearing on Defendants' Motion for Summary Judgment." In the alternative, even if the Supplemental Affidavit were considered, the trial court held, it would nevertheless deny the Specks' motion to alter or amend. The trial court observed that the facts stated in the Supplemental Affidavit did not affect the ten undisputed facts set out in the trial court's summary judgment order. The Specks both admitted to early suspicions that Mrs. Speck was pregnant based on her late period and on the positive test results from home pregnancy tests that "were 99% accurate." For all of these reasons, the trial court denied the Specks' motion to alter or amend.

We agree with the trial court that, even if Mrs. Speck's Supplemental Affidavit were considered, it does not create a genuine issue of material fact on the issue of notice. The Supplemental Affidavit states that Dr. Roy assured Mrs. Speck that "there was no way that [she] could be pregnant, it was not possible, [she] cannot be pregnant were his words." It also states that Dr. Roy told Mrs. Speck that "that there have been some false positives on pregnancy test[s] and that apparently there was a batch of faulty or defective pregnancy tests in the Jackson area." However, none of the alleged statements by Dr. Roy change the undisputed fact that by November 27, 2009, Mrs. Speck's menstrual period was late and she

-14-

had tested positive for pregnancy on at least one home pregnancy test. Dr. Roy's alleged statements may have given Mrs. Speck some reason to hope that her suspicions were incorrect, but she was still placed on inquiry notice before Dr. Roy's alleged statements and remained on inquiry notice after his statements. This conclusion is bolstered by the further undisputed fact that Mrs. Speck continued to investigate whether she was pregnant after speaking to Dr Roy. Thus, even giving the Specks the benefit of every reasonable inference, they still had knowledge of facts that placed them on inquiry notice about Mrs. Speck's pregnancy. *See Roe*, 875 S.W.2d at 656-57 (statute of limitations in medical malpractice action "is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred"). This holding makes it unnecessary for us to address whether the trial court erred in declining to consider Mrs. Speck's Supplemental Affidavit.

Under these circumstances, we must conclude that the trial court did not abuse its discretion in denying the Specks' motion to alter or amend the order granting the Defendants' motion for summary judgment based on the statute of limitations.

## CONCLUSION

We affirm the trial court's grant of summary judgment in favor of the Defendants based on the applicable statute of limitations, and we also affirm the trial court's denial of the Specks' motion to alter or amend the order granting summary judgment. This holding results in affirmance of the trial court's dismissal of the Specks' lawsuit in its entirety, and makes it unnecessary for us to address the Specks' argument that the trial court erred in granting the Defendants' motion for partial summary judgment based on *Smith v. Gore*. All other arguments raised but not specifically addressed herein are either rejected or are pretermitted by our decision.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to the Plaintiff/Appellants Julie Speck and Kevin Speck and their surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE